1 | Walter Mosley, Esq. (SBN 244169)
2 | wm@waltermosleyesq.com
   | Carlos E. Montoya, Esq. (SBN 317057)
3 | cem@waltermosleyesq.com
   | Nathalie Meza Contreras, Esq. (SBN 322545)
4 | nmc@waltermosleyesq.com
   | Mosley & Associates
5 | 1055 W. 7th St., Suite 3260
   | Los Angeles, California 90017
6 | Phone: (213) 643-6880

7 | Attorney for Plaintiff,
  | Mark Denton
8 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DENTON, an individual,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNFI GROCERS DISTRIBUTION, INC., a Minnesota corporation; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**1. DISCRIMINATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.;**<br><br>**2. FAILURE TO PREVENT DISCRIMINATION IN VIOLATION OF GOV'T CODE §12940(k); AND**<br><br>**3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br><br>**[DEMAND FOR JURY TRIAL]** |

**COMES NOW PLAINTIFF, Mark Denton,** and for causes of action against the Defendants and each of them, alleges as follows:

## JURISDICTION

1. This Court is the proper court, and this action is properly filed in the United States District Court, Central District of California, Western Division, because

Defendants' obligations and liability arise therein, because Defendants maintain offices and transact business within Los Angeles County, and because the work that is the subject of this action was performed by Plaintiff in Los Angeles County.

## THE PARTIES

2. Plaintiff, Mark Denton (hereinafter "Plaintiff" and "Mr. Denton"), is and at all times relevant hereto was a resident of the County of Los Angeles, State of California.

3. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendant UNFI Grocers Distribution, Inc. (hereinafter referred to as "UNFI," "Defendant," and "Employer") was and is a corporation doing business at 5200 Sheila St., Commerce in the County of Los Angeles, State of California.

4. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Employer owned and operated a private wholesale grocery company.

5. At all times relevant herein, Employer and DOES 1-20 were Plaintiff's employers, joint employers and/or special employers within the meaning of Government Code §§12926, subdivision (d), 12940, subdivisions (a),(h),(1), (h)(3)(A), and (i), and 12950, and regularly employ five (5) or more persons and are therefore subject to the jurisdiction of this Court.

6. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1-20, inclusive, are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names. Plaintiff will seek leave to amend this complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiff. Plaintiff is informed and believes, and based thereupon alleges, that each of the fictitiously named Defendants is responsible for the wrongful acts alleged herein and is therefore liable to Plaintiff as alleged hereinafter.

7. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, were the agents, employees,

managing agents, supervisors, coconspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each of the other Defendants.

8. Plaintiff is informed and believes, and based thereupon alleges, that Defendants, and each of them, including those defendants named as DOES 1-20, acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so, including pursuant to Government Code §12940(i). Plaintiff is further informed and believes, and based thereupon alleges, that Defendants, and each of them, including those defendants named as DOES 1-20, and each of them, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to cause and actually causing Plaintiff harm.

9. Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

10. Plaintiff has filed complaints of discrimination, retaliation, failure to prevent discrimination or retaliation, and wrongful termination under Government Code §§12940, et seq., the California Fair Employment and Housing Act ("FEHA") with the California Department of Fair Employment and Housing ("DFEH"), and has satisfied Plaintiff's administrative prerequisites with respect to these and all related filings.

**ALTER EGO, AGENCY, SUCCESSOR AND JOINT EMPLOYER**

11. Plaintiff is informed and believes, and based thereon alleges, that there exists such a unity of interest and ownership between Employer and DOES 1-20 that the individuality and separateness of defendants have ceased to exist.

12. Plaintiff is informed and believes, and based thereon alleges, that despite the formation of purported corporate existence, Employer and DOES 1-20 are, in reality, one and the same as Defendants, including, but not limited to because:

    a. Employer is completely dominated and controlled by one another and DOES 1-20, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind Defendants to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

    b. Employer and DOES 1-20 derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

    c. Employer and DOES 1-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

    d. Employer does not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

    e. The business affairs of Employer and DOES 1-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. Employer is, and at all times relevant hereto were, used by one another and DOES 1-20 as a mere shell and conduit for the conduct of certain of Defendants' affairs, and are, and were, the alter ego of one another and DOES 1-20. The recognition of the separate existence of Defendants would not promote justice, in that it would permit Defendants to insulate themselves from liability to Plaintiff for violations of the Government Code and other statutory violations. The corporate existence of Employer and DOES 1-20 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiff herein.

13. Accordingly, Employer constitutes the alter ego of one another and DOES 1-20, and the fiction of their separate corporate existence must be disregarded.

///

14. As a result of the aforementioned facts, Plaintiff is informed and believes, and based thereon alleges that Employer and DOES 1-20 are Plaintiff's joint employers by virtue of a joint enterprise, and that Plaintiff was an employee of Employer and DOES 1-20. Plaintiff performed services for each and every one of Defendants, and to the mutual benefit of all Defendants, and all Defendants shared control of Plaintiff as an employee, either directly or indirectly, and the manner in which Defendants' business was and is conducted.

15. Alternatively, Plaintiff is informed and believes and, based thereupon alleges, that as and between DOES 1-20, Employer, or any of them, (1) there is an express or implied agreement of assumption pursuant to which Employer and/or DOES 1-20 agreed to be liable for the debts of the other Defendants, (2) the transaction between Employer and/or DOES 1-20 and the other Defendants amounts to a consolidation or merger of the two corporations, (3) Employer and/or DOES 1-20 are a mere continuation of the other Defendants, or (4) the transfer of assets to Employer and/or DOES 1-20 is for the fraudulent purpose of escaping liability for Defendants' debts. Accordingly, Employer and/or DOES 1-20 are the successors of one or more of the other Defendants, and are liable on that basis.

## FACTUAL ALLEGATIONS

16. On or about December 9, 2003, UNFI hired Mr. Denton to work as a truck driver. Mr. Denton was a full-time, non-exempt employee, and performed all of his job duties satisfactorily before he was wrongfully terminated on or about April 21, 2022.

17. Mr. Denton is African American and was 57 years old at the time of termination.

### Mr. Denton Gets into an Accident While Working for UNFI

18. On or around March 25, 2022, while waiting to make a delivery, Mr. Denton was parked and waiting to be signaled to drive his truck into a shipping dock. Once the

truck in front of him finished unloading his truck, that driver signaled Mr. Denton to drive towards the shipping dock.

19. Seconds after Mr. Denton put the truck into the drive gear, he felt an impact on his truck. Mr. Denton immediately put the truck back into the parking gear, exited the truck, and noticed that another driver's vehicle collided with the front side bender of the truck he was driving.

20. Mr. Denton observed that the driver of the vehicle was somewhere within the range of 70 to 80 years old and using a hearing aid. Mr. Denton asked the man if he was okay, and after asking a few questions, learned that this driver did not have a driver's license.

21. Mr. Denton called his supervisor, Transportation Manager Eddie Doe ("Eddie"), and explained what had happened. Eddie told Mr. Denton to finish his deliveries for that work day and to return to the warehouse after, reassuring him that they would file a report upon his arrival to the warehouse.

22. Upon returning to his truck, Mr. Denton wrote the old man's information on a report from he had on hand and continued with his deliveries for the day and instructed by management.

23. Mr. Denton returned to the company warehouse at approximately 3:00 p.m. and filled out a report that was provided to him by supervisor Devon Hart ("Mr. Hart") titled "UNFI Driver Accident Report." Mr. Denton filled out the accident report, to the best of his ability to recall the details of the accident that morning and submitted it to Mr. Hart. After Mr. Hart read the report, Mr. Hart asked Mr. Denton if the truck had moved. When Mr. Denton affirmed that he did not recall the truck moving. Mr. Hart instructed Mr. Denton to emphasize on the accident report that the truck was not moving at the time of the accident and instructed Mr. Denton to write on the accident report: "NOTE: This truck was not moving." Mr. Denton complied with Mr. Hart's instruction and based on his best recollection of the accident that morning.

///

24. On or around March 31, 2022, Mr. Denton was called into the Transportation Management Office with his shop steward, Johnny Sarraf ("Mr. Sarraf"), the Transportation Manager, Eddie, and the Warehouse Manager, David.

25. Inside the Transportation Management Office, Mr. Denton was shown security footage of the accident that revealed that the truck moved forward approximately two feet at the time of the accident. After showing Mr. Denton the video, Eddie said "you said the truck didn't move, but it did move." Mr. Denton responded, saying "well, I thought it did not move." Mr. Denton further explained that he wrote the report to the best of his recollection at the time and that the report was written upon returning to the yard, rather than immediately after the accident. Eddie then retrieved Mr. Denton's badge, telling him that a decision from "higher-up" had been made to suspend him for falsifying records until "further notice."

26. After this meeting, Mr. Denton remembered that he was instructed by his supervisor, Mr. Hart to write into the accident report that the truck did not move. Mr. Denton called Mr. Hart and informed him of his suspension from work and reminded Mr. Hart of his instruction to Mr. Denton to write into the accident report that the truck had not moved. In response, Mr. Hart said he was sorry about that instruction and admitted that maybe he should not be instructing employees to do that.

27. Shortly after finishing the call with Mr. Hart, Mr. Denton sent Eddie, the Transportation Manager, a text message informing him that Mr. Hart instructed him to write on the accident report that the truck did not move.

**UNFI Wrongfully Terminates Mr. Denton's Employment**

28. On or about April 6, 2022, Mr. Denton submitted a detailed letter to UNFI explaining the accident and the instructions he received from Mr. Hart.

29. Then, on or about April 8, 2022, Mr. Denton received a call from an on-site Human Resources member, Paula Alonzo ("Ms. Alonzo"), asking him to come into the Transportation Management Office so that he could recount his version of the accident to her. Mr. Denton went into this meeting accompanied by Mr. Sarraf. Ms. Alonzo showed

Mr. Denton the video again, and Mr. Denton reiterated his breakdown of the events that took place during the accident, stating that he did not see the older man in his blind spot, that he was told to pull forward by someone who had a better view of the truck, and that the truck sometimes moved forward very incrementally at times, even when his foot was on the break. Ms. Alonzo responded to Mr. Denton's comment about the truck moving forward incrementally despite his foot being on the break by saying "oh, that happens to me sometimes too in my vehicle."

30. After the meeting, Ms. Alonzo told Mr. Denton that they would call him later upon further review of all the circumstances surrounding the accident.

31. Mr. Denton did not receive a call until approximately a month later. On or about April 21, 2022, Ms. Alonzo called Mr. Denton to notify him that after viewing the video and hearing his story, he was terminated and was required to come into the office to pick up his final paycheck.

32. On or about April 29, 2022, Mr. Denton's Union Representative, Juan, set up a meeting with Ms. Alonzo, Eddie, David, and Mr. Sarraf, in what Mr. Denton believes to be a grievance meeting. Mr. Denton reiterated his version of the story, and Juan explained that the accident was minor while leveraging Mr. Denton's clean employment record. Everyone at the meeting unanimously agreed that Mr. Denton deserved a second chance but told him that they would need to run it by corporate again.

33. However, on or about May 13, 2022, Johnny called Mr. Denton and told him that they would not give him a second chance.

34. At the time of Mr. Denton's employment, Mr. Denton was one of only two African American employees that worked as truck drivers at the facility.

35. Mr. Denton was also aware that another truck driver, a Latino driver, got into a truck accident while working, but was not terminated.

36. UNFI discriminated and retaliated against Mr. Denton by terminating his employment due to his age and race.

///

37. Mr. Denton's termination was substantially motivated by his age and race. UNFI's discriminatory animus is evidenced by the previously mentioned facts wherein he was terminated for a minor accident while having a clean employment record, while others employed by UNFI that had been involved in accidents were not terminated.

38. As a result of UNFI's actions, Mr. Denton has suffered and will continue to suffer general and special damages, including severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments, as well as medical expenses, expenses for psychological counseling and treatment, and past and future lost wages and benefits.

39. As a result of the above, Mr. Denton is entitled to past and future lost wages, bonuses, commissions, benefits and loss or diminution of earning capacity.

40. Mr. Denton claims general damages for emotional and mental distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

41. Because the acts taken toward Mr. Denton were carried out by officers, directors and/or managing agents acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of Mr. Denton's rights and in order to injure and damage him, Mr. Denton requests that punitive damages be levied against UNFI and each of them, in sums in excess of the jurisdictional minimum of this Court.

## FIRST COUNT
## FOR DISCRIMINATION IN VIOLATION OF GOV'T CODE §§12940 ET SEQ. AGAINST DEFENDANT

42. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

43. At all times hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

///
///

44. As such term is used under FEHA, "on the bases enumerated in this part" means or refers to discrimination on the bases of one or more of the protected characteristics under FEHA.

45. FEHA requires Defendants to refrain from discriminating against an employee on the age and race from occurring.

46. Plaintiff was a member of multiple protected classes as a result of Plaintiff's age and race.

47. At all times relevant hereto, Plaintiff was performing competently in the position Plaintiff held with Defendant.

48. Plaintiff suffered the adverse employment actions of discrimination, failure to investigate, remedy, and/or prevent discrimination, failure to reinstate and/or return to work, and termination, and was harmed thereby.

49. Plaintiff is informed and believes that Plaintiff's age and race were motivating reasons and/or factors in the decisions to subject Plaintiff to the aforementioned adverse employment actions.

50. Said conduct violates the FEHA, and such violations were a proximate cause in Plaintiff's damage as stated below.

51. The damage allegations of all preceding paragraphs, inclusive, are herein incorporated by reference.

52. The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

53. Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

# SECOND COUNT
# FAILURE TO PREVENT DISCRIMINATION AND RETALIATION
# IN VIOLATION OF GOV'T CODE §12940(k)
# AGAINST ALL DEFENDANTS

54. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

55. At all times hereto, the FEHA, including in particular Government Code §12940(k), was in full force and effect and was binding upon Defendants. This subsection imposes a duty on Defendants to take all reasonable steps necessary to prevent discrimination and retaliation from occurring. As alleged above, Defendants violated this subsection and breached their duty by failing to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.

56. The above said acts of Defendants constitute violations of the FEHA and were a proximate cause in Plaintiff's damage as stated below.

57. The damage allegations of all preceding paragraphs, inclusive, are herein incorporated by reference.

58. The foregoing conduct by Defendant individually, or by and through their officers, directors and/or managing agents, was intended by the Defendant to cause injury to the Plaintiff or was despicable conduct carried on by the Defendant with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

59. Pursuant to Government Code §12965(b), Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

///
///
///

# THIRD COUNT
# FOR WRONGFUL TERMINATION
# IN VIOLATION THE PUBLIC POLICY OF THE STATE OF CALIFORNIA
# AGAINST ALL DEFENDANTS

60. Plaintiff re-alleges and incorporates by reference all preceding paragraphs, inclusive, as though set forth in full herein.

61. At all relevant times mentioned in this complaint, the FEHA was in full force and effect and was binding on Defendant. This law requires Defendant to refrain from, among other things, discriminating against any employee on the basis of disability, medical condition, real or perceived, and use of medical leave, and from retaliating against any employee who engages in protected activity.

62. At all times mentioned in this complaint, it was a fundamental policy of the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of disability, medical condition, real or perceived, use of medical leave and/or engagement in protected activity.

63. Plaintiff believes and thereon alleges that Plaintiff's disability and/or medical condition, real or perceived, use of medical leave, engagement in protected activity with respect to these protected classes, and/or some combination thereof, were factors in Defendants' conduct as alleged hereinabove.

64. Such discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of disability, medical condition, real or perceived, or use of medical leave, Plaintiff's complaining of harassment and discrimination due to these protected classes, Plaintiff's engagement in protected activity, and/or some combination of these factors, were a proximate cause in Plaintiff's damages as stated below.

65. The above said acts of Defendants constitute violations of the Government Code and the public policy of the State of California embodied therein as set forth above.
///

66. Defendants violated these laws by discriminating and retaliating against Plaintiff and terminating Plaintiff's employment in retaliation for exercise of protected rights.

67. The damage allegations all preceding paragraphs, inclusive, are herein incorporated by reference.

68. The foregoing conduct of Defendants individually, or by and through their officers, directors and/or managing agents, was intended by the Defendants to cause injury to the Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks judgment against Defendants and each of them, in an amount according to proof as follows:

1. For a money judgment representing compensatory damages including lost wages, earnings, commissions, retirement benefits, and other employee benefits, and all other sums of money, together with interest on these amounts; for other special damages; and for general damages for mental pain and anguish and emotional distress and loss of earning capacity;

2. For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment in this matter;

**WHEREFORE**, Plaintiff further seeks judgment against Defendant, and each of them, in an amount according to proof, as follows:

3. For a declaratory judgment reaffirming Plaintiff's equal standing under the law and condemning Defendant's discriminatory practices;

4. For injunctive relief barring Defendant's discriminatory employment policies and practices in the future, and restoring Plaintiff to Plaintiff's former position with Defendant;

5. For punitive damages, pursuant to Civil Code §§3294 in amounts sufficient to punish Defendant for the wrongful conduct alleged herein and to deter such conduct in the future;

6. For injunctive relief compelling Defendant to report to federal and state authorities wages earned by Plaintiff, and other employees, and pay all state and federal taxes owing, employer matching funds, unemployment premiums, social security, Medicare, and workers' compensation premiums, all this in an amount according to the proof;

7. For restitutionary disgorgement of profits garnered as a result of Defendant's unlawful conduct, misclassification of Plaintiff as an independent contractor, and failure to pay wages and other compensation in accordance with the law;

8. For costs of suit, attorneys' fees, and expert witness fees pursuant to the FEHA and/or any other basis;

9. For post-judgment interest; and

10. For any other relief that is just and proper.

DATED: January 31, 2023              **MOSLEY & ASSOCIATES**

By: /s/ Nathalie Meza Contreras
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiff
MARK DENTON

**JURY TRIAL DEMANDED**

Plaintiff MARK DENTON demands trial of all issues by jury.

DATED: January 31, 2023              **MOSLEY & ASSOCIATES**

By: /s/ Nathalie Meza Contreras
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiff
MARK DENTON